**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| AMY LEIGH CHAFFIN,<br><br>     *Plaintiff,*<br><br>v.<br><br>**BLOOMIN' BRANDS, INC.[1], and**<br>**OUTBACK STEAKHOUSE OF FLORIDA,**<br>**LLC,**<br><br>     *Defendants.* | **CIVIL ACTION NO.**<br>**5:21-cv-00267-TES** |

## ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Outback Steakhouse of Florida, LLC's Motion for

Summary Judgment [Doc. 28].

## FACTUAL BACKGROUND

On October 15, 2019, Plaintiff Amy Leigh Chaffin fell in the restroom at the

Outback Steakhouse in Macon, Georgia. [Doc. 28-2, ¶ 1].[2] The relevant facts precede that

date, though. In 1994, Plaintiff experienced a back injury at work, which necessitated

spinal surgeries, including a multi-level fusion. [*Id.* at ¶ 3]. Then in 2008, Plaintiff was

---

[1] The Court terminated Defendant Bloomin' Brands, Inc., pursuant to the parties' consent Motion to Dismiss, and substituted Defendant Outback Steakhouse of Florida, LLC as the proper sole defendant. [Doc. 8]; [Doc. 9].

[2] Plaintiff did not dispute the majority of Defendant's material facts. *Compare* [Doc. 28-2], *with* [Doc. 31-5]. Therefore, the Court cites primarily to Defendant's Statement of Undisputed Material Facts.

involved in an automobile accident, after which she underwent several spinal fusions, was paralyzed, and confined to a wheelchair. [*Id.* at ¶ 4]. Again, in 2011, Plaintiff tripped and fell at work, which led to a commercial shelving unit falling on her. [*Id.* at ¶ 5]. Those injuries caused ruptures in three discs in her neck. [*Id.*]. After those injuries, Plaintiff underwent several surgeries on her right arm and shoulder. [*Id.*]. Because Plaintiff is paralyzed and confined to a wheelchair, she has two options when transferring to a toilet. First, Plaintiff's preferred method is to maneuver to the side of the toilet and slide over onto the toilet seat. [Doc. 28-6, A. Chaffin Depo., p. 70:15–21]. If her preferred method isn't possible, Plaintiff parks her wheelchair in front of the toilet and uses pull bars to stand up, rotate her body, and sit down on the toilet. [*Id.* at p. 70:6–14].

On the day of the incident underlying this action, Plaintiff and her wife, Candi Chaffin, entered the Outback Steakhouse and were led to a table. [Doc. 28-2, at ¶ 13]. Plaintiff immediately went to the restroom to "freshen up." [*Id.* at ¶ 14]. Plaintiff's wife did not accompany her to the restroom. [*Id.*]. Upon entering the handicap stall in the restroom, Plaintiff discovered a large trash can blocking the path to the toilet. [*Id.* at ¶ 15]. Plaintiff drug the trash can out of the stall so she could properly maneuver her wheelchair near the toilet. [*Id.* at ¶ 16]. Plaintiff parked her wheelchair directly in front of the toilet and needed to turn 180 degrees to be able to sit on the toilet. [*Id.* at ¶ 18]. While maneuvering between her wheelchair and the toilet, Plaintiff's feet "shot out"

from beneath her and she fell to the ground. [*Id.* at ¶ 21]. Once on the floor, Plaintiff noticed her clothes were wet. [*Id.* at ¶ 33]. Plaintiff looked around her and discovered a "large amount of water on the floor." [Doc. 28-6, A. Chaffin Depo., p. 79:10–20].

Plaintiff then texted her wife to come help her. [Doc. 28-2, ¶ 31]. Candi then entered the restroom to assist Plaintiff back into her wheelchair. [*Id.* at ¶ 32]. One of the managers also came into the restroom to check on Plaintiff. [Doc. 28-6, A. Chaffin Depo., p. 62:17–23]. While talking with Plaintiff and her wife, the manager said "I've been trying to get them to fix this floor for months. And they wouldn't . . . they've not fixed it." [*Id.* at pp. 62:24—63:3]. The manager told Plaintiff and her wife that the "sink has been leaking across the floor for months." [*Id.* at p. 66:1–5]. The manager then set up—at Plaintiff's feet—a "wet floor" sign that was stored under the sink. [*Id.* at p. 63:4–10].

Plaintiff then left the restaurant in an ambulance. [*Id.* at p. 63:5–7]. Once at the hospital, medical staff ordered an MRI with contrast and other tests on Plaintiff's back and head. [*Id.* at p. 40:8–11]. Plaintiff's sole injury from this incident is to her T11-T12 level in her spine, which caused radiating pain into her hips. [Doc. 28-2, ¶ 34]. As a result of that injury, Plaintiff's doctor—Dr. Osborn—performed a laminectomy infusion surgery. [Doc. 28-6, A. Chaffin Depo., p. 48:1–13]. Even after the surgery, though, Plaintiff still experiences pain and tingling in her groin and hip areas. [*Id.* at pp. 51:17—52:22].

On June 22, 2021, Plaintiff filed the instant action in Bibb County Superior Court. [Doc. 5-2, p. 3]. On July 30, 2021, Outback removed the action to this Court. [Doc. 5]. Outback filed its summary-judgment motion on January 6, 2023. [Doc. 28].

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).[3] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other

---

[3] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for the purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted). Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

## **DISCUSSION**

In its summary-judgment motion, Outback asserts four arguments: (1) Plaintiff failed to exercise ordinary care for her own safety; (2) Plaintiff assumed the risk by maneuvering to the toilet in the manner she chose; (3) Plaintiff had superior knowledge of the water on the floor; and (4) Plaintiff cannot prove causation based on her pre-existing conditions. *See generally* [Doc. 28-1]. The Court addresses each in turn.

## I.    **Ordinary Care**

First, Outback asserts that "[a]s an individual who cannot use her legs, Plaintiff

needs to take certain safety precautions each and every time she gets into or out of her

wheelchair[.]" [Doc. 28-1, p. 8]. Because of that, Outback argues that "Plaintiff fell

because she did not take the necessary actions to protect herself, rather than due to any

alleged negligence of [Outback]." [*Id*.]. The underlying premise of this argument is that

Plaintiff (1) went to the restroom alone,[4] and (2) parked her wheelchair in a different

spot than usual, which required her to do a full 180-degree rotation to get onto the

toilet. [*Id*.].

Georgia law requires an invitee to "[exercise] ordinary care for personal safety

and [use] ordinary care to avoid the effect of the owner/occupier's negligence after that

negligence becomes apparent to the invitee or in the exercise of ordinary care the invitee

should have learned of it." *Alterman Foods, Inc. v. Ligon*, 272 S.E.2d 327, 330 (1980).

Here, there is no evidence showing that Plaintiff failed to exercise ordinary care

for her own safety. Obviously, Plaintiff admits that, given the chance, she would do

things differently the second time. [Doc. 31, p. 14]. However, that does not mean that

she acted without ordinary care in the first place.

---

[4] There is no evidence that Plaintiff needed help using the restroom—or, more appropriately, that Plaintiff couldn't use the restroom alone. Indeed, Plaintiff testified that her wife helps her more now—after the fall—but did not help as often before. [Doc. 28-6, A. Chaffin Depo., p. 92:8–16]. Plaintiff's wife also testified that before the fall, she only helped Plaintiff to the restroom "sometimes." [Doc. 28-7, C. Chaffin Depo., p. 12:8–10].

Outback relies on *Moore v. Prospect Airport Services, Inc.*, in which the United States District Court for the Northern District of Georgia refused to dismiss a plaintiff's claims for injuries based on her own alleged failure to exercise reasonable care. No. 1:16-CV-3875-RWS, 2019 WL 11232171, at *1 (N.D. Ga. Jan. 8, 2019); [Doc. 28-1, p. 9]. In *Moore*, the plaintiff faced difficulty walking, but security officers at the TSA checkpoint instructed her to get out of her wheelchair for a screening. *Moore*, 2019 WL 11232171, at *1. After the screening, the plaintiff attempted to sit back down, but the wheelchair had been removed and she fell to the ground. *Id.* The court denied the defendants' motion to dismiss, holding that it could not "say that [p]laintiff failed to exercise ordinary care for her own safety by standing from the wheelchair and attempting to sit back down." *Id.* at *2.

Outback attempts to both analogize and distinguish this case by asserting that the plaintiff in *Moore* only had trouble walking, while the Plaintiff in this case is completely paralyzed. [Doc. 28-1, p. 9]. But that just simply misses the mark. While Plaintiff admits that the side-by-side approach is preferable, that does not mean that the approach she used on the day of the incident is somehow less safe or *per se* unreasonable. Indeed, similar to the *Moore* court's conclusion, just because Plaintiff used a different approach, that does not mean that she was "likely to fall." *Moore*, 2019 WL 11232171, at *3. Outback doesn't present any evidence that the method Plaintiff used on the day of the incident is categorically unsafe or likely to produce a fall. The only

evidence is that Plaintiff **prefers** the side-by-side approach. That, however, does not lead

to a conclusion that she somehow exercised less than ordinary care.

The *Moore* court also restated that under Georgia law, "issues of negligence,

contributory negligence and lack of ordinary care for one's own safety are [typically]

not susceptible of summary adjudication but should [instead] be resolved by trial in the

ordinary manner." *Id.* at *3 (citing *Robinson v. Kroger Co.*, 493 S.E.2d 403, 408 (Ga. 1997)).

Indeed, Georgia courts are adamant that these questions are within the province of the

jury. *See S. Stages v. Clements*, S.E.2d 429, 432 (Ga. Ct. App. 1944) (holding that these

sorts of issues are "are questions peculiarly for the jury."); *Etheridge Motors, Inc. v.

Haynie*, 131 S.E.2d 212 (Ga. Ct. App. 1963); *Coote v. Branch Banking*, 664 S.E.2d 554 (Ga.

Ct. App. 2008). Here, the "evidence does not plainly, palpably, and indisputably lead to

the conclusion that . . . [Plaintiff's actions] are want of such prudence as the ordinarily

careful person would use in a like situation." *Robinson,* 493 S.E.2d at 410. Outback

presents no argument which overcomes the typical approach to resolving this sort of

question by presenting the evidence to a jury.

## II.   <u>Assumption of the Risk</u>

Similarly, Outback argues that Plaintiff assumed the risk of falling when she

used a method that "was not the safest or best way" to get on and off of the toilet. [Doc.

28-1, p. 10]. In Georgia, a "defendant asserting an assumption of the risk defense must

establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and

appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks." *Clemmons v. Smith*, 540 S.E.2d 623, 625 (Ga. Ct. App. 2000). "Knowledge of the risk is the watchword of assumption of the risk, and means both actual and subjective knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury." *Id.*

In this case, there is no evidence that establishes Plaintiff knew of any danger associated with using the method she employed on the day of the incident. Instead, Plaintiff only testified that she *preferred* the other method—likely because it is easier. But that does not necessarily mean that the method she ultimately used was not safe. Indeed, there is no evidence that Plaintiff fell before while using this method, or any testimony from any expert on how a paralyzed person should safely maneuver out of a wheelchair.

Outback relies on *Daly v. Berryhill*, however that case does little to help its cause. 843 S.E.2d 870 (Ga. 2020). In *Daly*, the plaintiff fell 18 feet from a deer stand after taking medications which included side effects of dizziness and/or loss of consciousness. *Id.* at 872. In agreeing with the trial court's decision to charge the jury on assumption of the risk, the Georgia Supreme Court held that there need only be "slight evidence supporting the theory of the [jury] charge to authorize a requested jury instruction." *Id.* at 873.

The Court agrees with *Daly*'s guidance. However, that does not dispose of Plaintiff's claims. *Daly*—and other similar Georgia cases—hold that a jury should receive a charge on assumption of the risk. But the entitlement to that jury charge *at trial* does not equal summary judgment for the defendant *before trial*. Indeed, questions of assumption of the risk are generally not susceptible to summary judgment. *Woolbright v. Six Flags Over Ga., Inc.*, 321 S.E.2d 787 (Ga. Ct. App. 1984). In order for summary judgment to be proper on the basis of assumption of the risk, the evidence must be "plain, palpable, and indisputable," demonstrating that the "plaintiff assumed the risk of her injuries." *Jekyll Island State Park Auth. v. Machurick*, 552 S.E.2d 94, 95 (Ga. Ct. App. 2001); *Bills v. Lowery*, 648 S.E.2d 779 (Ga. Ct. App. 2007). This is not one of those cases.

### III.   <u>Superior Knowledge</u>

Next, Outback argues that Plaintiff had "equal, if not superior, knowledge of the water because she examined the floor several times before falling." [Doc. 28-1, p. 11].

Under Georgia law, "[l]iability for injuries resulting from an invitee's slip and fall on a proprietor's premises is determined by the relative 'knowledge' possessed by the proprietor and the invitee of the condition or hazard which resulted in the injury." *Veterans of Foreign Wars, Post No. 665 v. Sweet*, 315 S.E.2d 294, 295 (Ga. Ct. App. 1984). "If the invitee knows of the condition or hazard, there is no duty on the part of the proprietor to warn the invitee and there is no liability for the resulting injury because the invitee has as much knowledge as the proprietor." *Id.*

11

Here, Plaintiff admits she looked at the bathroom floor as she prepared to maneuver to the toilet. [Doc. 28-6, A. Chaffin Depo., p. 77:22–25]. However, Plaintiff testified that she never saw or recognized there was water on the floor until she fell and felt it on her clothes and body. [*Id.* at p. 61:21–25]. As such, there is no evidence that Plaintiff had any knowledge—actual or constructive—of the water on the floor.

But, there is evidence that Outback's manager knew of the situation.[5] After entering the restroom, the manager told Plaintiff and her wife, "I've been trying to get them to fix this floor for months. And they wouldn't . . . they've not fixed it." [*Id.* at pp. 62:24—63:3].[6] The manager continued, saying the "sink has been leaking across the floor for months." [*Id.* at p. 66:1–5]. Even more, another customer—Adrianne—a regular at the restaurant, complained to Plaintiff and her wife that the floors were always "wet and slick." [*Id.* at pp. 64:25—65:5]; [Doc. 28-7, C. Chaffin Depo., 20:20–24]. Therefore, the evidence tends to show that Outback—not Plaintiff—had superior knowledge of the leak and the propensity of that leak to cause standing water in the restroom.

[5] The manager's knowledge can be imputed to Outback. *See Fam. Thrift, Inc. v. Birthrong*, 785 S.E.2d 547, 550 (Ga. Ct. App. 2016); *Walmart Stores E. L. P. v. Benson*, 806 S.E.2d 25, 29 (Ga. Ct. App. 2017).

[6] Outback argues in its Reply [Doc. 36] that Plaintiff failed to "provide any information to aid Outback in locating this alleged employee." [Doc. 36, p. 4]. However, Plaintiff testified that a female named "Carson or Karen, or somebody like that," made the statements. [Doc. 28-6, A. Chaffin Depo., p. 62:17–23]. Outback also argues that its manager, Karcyn Eilers, denies making the statement, therefore it is inadmissible. [Doc. 36, p. 4 (relying on *Metts v. Wal-Mart Stores, Inc.*, 604 S.E.2d 235 (Ga. Ct. App. 2004)]. However, that is not enough to exclude the statement as hearsay. Plaintiff identified her by a similar name. Just because she denies making the statement does not make it inadmissible hearsay—instead, it creates a credibility question for the jury. *See Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1558 (11th Cir. 1984).

Outback relies on *El Ranchero Mexican Restaurant, No. 10, Inc. v. Hiner*, where a plaintiff felt her feet slide on a slippery floor and still proceeded to walk on the floor before falling. 728 S.E.2d 761 (Ga. Ct. App. 2012). The plaintiff in *El Ranchero* also visited the restaurant before and noticed the slippery floors. *Id.* at 764. Therefore, the Georgia Court of Appeals concluded that "she could not prove she lacked equal knowledge of the hazard." *Id.* at 763.

This case is wholly different from *El Ranchero*. First, the obvious: Plaintiff is paralyzed and unlike the plaintiff in *El Ranchero*, she could not have noticed the slippery floor with her feet before making the transition from her wheelchair to the toilet. Second, the plaintiff in *El Ranchero* visited the restaurant before and knew of the floor's propensity to be wet and slippery. *Id.* Here, Plaintiff testified that she never visited this Outback location before the day of the incident. [Doc. 28-6, A. Chaffin Depo., p. 85:10–12].

Because the evidence fails to show that Plaintiff had any knowledge of the risk but does show that Outback had knowledge of the leak and floor problems, Outback's argument fails.

**IV.** <u>**Causation**</u>

In typical negligence cases, juries are trusted to discern the causal link between a defendant's conduct and the resulting injury without help from experts. *Hawkins v. DeKalb Med. Ctr., Inc.*, 721 S.E.2d 131, 139 (Ga. Ct. App. 2011). However, in cases where

that causal link is "beyond common knowledge and experience," an expert's testimony is necessary. *Id.* (citing *Cowert v. Widener*, 697 S.E.2d 779 (Ga. 2010)). This is especially true when the plaintiff suffers from a pre-existing condition. *See Eberhart v. Morris Brown Coll.*, 352 S.E.2d 832 (Ga. Ct. App. 1987). In those circumstances, a "causal connection, requiring medical expert testimony, must be established[.]" *Jordan v. Smoot*, 380 S.E.2d 714, 715 (Ga. Ct. App. 1989). The only caveat to this rule applies when the pre-existing condition has subsided prior to the incident in question. *See Cox v. Rewis*, 429 S.E.2d 314 (Ga. Ct. App. 1993). Otherwise, "if there is evidence that the complained-of injury is a preexisting condition, the plaintiff must produce medical testimony explaining why the tortious event aggravated the prior condition to survive a motion for summary judgment." *Bruce v. Classic Carrier, Inc.*, No. 1:11-cv-01472-JEC, 2014 WL 1230231, at *7 (N.D. Ga. Mar. 24, 2014).

In some cases, courts have allowed plaintiffs to move past summary judgment where an expert opined it was *possible* that the tortious conduct aggravated the pre-existing injury, but only because the expert testimony was paired with other evidence to supplement the claim of aggravation. *Id.* (citing *Rodrigues v. Georgia-Pacific Corp.*, 661 S.E.2d 141 (Ga. Ct. App. 2008)). For example, in *National Dairy Products v. Durham*, the plaintiff testified that he was in good health prior to a collision that allegedly activated a tumor that was previously dormant. 154 S.E.2d 752 (Ga. Ct. App. 1967). In that case, the Georgia Court of Appeals held that the testimony of experts stating it was possible,

14

combined with the plaintiff's own testimony regarding his prior health, moved plaintiff past summary judgment. *Id.* at 754.

Similarly, in *Rodrigues*, the plaintiff claimed that exposure to chemicals caused pneumonia that led to a pulmonary edema. 661 S.E.2d at 142–43. To support the causal link, the plaintiff produced affidavits of emergency room staff that went beyond the testimony of the retained expert and asserted that the tortious conduct *likely* caused the injury. *Id.* at 143–44. The Georgia Court of Appeals held that was sufficient to withstand summary judgment because "medical testimony stated only in terms of a 'possible' cause may be sufficient when supplemented by probative non-expert testimony on causation." *Id.* at 144.

This case fits nicely within the latter category. Here, Plaintiff's doctor—Dr. Keith Osborn[7]—testified that even if the disc herniation predated the fall,[8] such a traumatic injury could exacerbate the condition and cause pain. [Doc. 28-8, Osborn Depo., p. 33:2–7]. Dr. Osborn also testified that even "minor trauma" can cause an "acute worsening of symptoms" of stenosis because the "spinal cord is more vulnerable to injury." [*Id.* at p.

---

[7] Because Plaintiff did not identify Dr. Osborn as an expert witness, he may only testify to his knowledge based on his treatment and visits with Plaintiff. *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011). That does include "lay *opinion* testimony . . . when the opinion is based on his experience as a physician and [is] clearly helpful to an understanding of his decision making process in the situation." *Id.* (citing *Weese v. Schukman*, 98 F.3d 542 (10th Cir. 1996)). Such testimony, for example, could include Dr. Osborn's decision-making process when deciding to perform the T11-T12 fusion surgery.

[8] The Court agrees with Outback that Dr. Osborn's testimony—absent any other expert testimony—precludes Plaintiff from alleging the fall *caused* the disc herniation. [Doc. 28-8, Osborn Depo., p. 28:10–15]. However, Dr. Osborn's testimony directly supports an aggravation theory. [*Id.* at p. 33:2–18].

33:8–22]. Ultimately, when asked if "a report of increased pain, starting from the date of the fall and worsening over the course of succeeding months" would be consistent with an exacerbation of Plaintiff's pre-existing injury, Dr. Osborn replied "Yes." [*Id.* at p. 33:8–18].

Pair that with Plaintiff's immediate complaints of new back pain and numbness following the fall. [Doc. 28-8, Osborn Depo., p. 12:4–15]; [Doc. 28-6, A. Chaffin Depo., p. 54:10–23]; [Doc. 32-3, p. 11 ("[Patient] has NEW symptoms since the recent fall.")]. That evidence, taken together, is enough to establish causation for a claim of aggravation of a pre-existing condition for purposes of Outback's Motion. Much like the plaintiff in *Durham*, Plaintiff likely did not realize she had a dormant disc herniation until the fall sparked the pain and numbness. Although Dr. Osborn clearly stated that the herniation pre-dated the fall, he clarified that it is still possible, "or even likely," that a "traumatic episode could cause [Plaintiff's] changes to develop." [Doc. 28-8, Osborn Depo., p. 32:1–5].

Outback attempts to analogize this case to *Harden v. Family Dollar Stores of Georgia, LLC*, where this Court found a plaintiff failed to establish causation in a slip and fall case. No. 5:21-CV-00105-TES, 2022 WL 4473698, at *1 (M.D. Ga. Sept. 26, 2022). However, there are significant differences between *Harden* and this case.

First, the *Harden* plaintiff complained of the same back pain for years preceding the incident. Indeed, two days before her fall, she visited her doctor and mentioned the

same exact pain she would later claim resulted from the fall. *Id.* at *4. After the fall, the plaintiff told medical providers that her back hurt less than it did before the fall. *Id.* Second, in *Harden*, the treating physician stated that the plaintiff's fall could *hypothetically* aggravate a pre-existing condition. There was no additional evidence— from the plaintiff or otherwise—to combine with the doctor's hypothetical link to establish causation. *Id.*

Here, Plaintiff testified that her hip pain—a new pain she hadn't experienced before—began immediately after the fall. That temporal proximity is enough so that "a lay jury could conclude from common knowledge that a casual connection existed in light of the short lapse between the [plaintiff's] accident and [her] onset of symptoms and receipt of medical treatment." *Hutcheson v. Daniels*, 481 S.E.2d 567, 569 (Ga. Ct. App. 1997). Although Outback argues that Plaintiff experienced the same pain before, a closer review of the medical records shows that before the fall, Plaintiff complained of mid-back and neck pain. [Doc. 38, p. 1]. After the fall, Plaintiff alleged lower back and hip pain. [Doc. 32-3, p. 2]. Those two types of pain are different and are certainly different from the plaintiff's claims of the **exact** same pain in *Harden*. Also, as discussed above, Dr. Osborn testified that it is likely that the fall aggravated Plaintiff's pre-existing disc herniation. That, again, is different from the weak hypothetical link in *Harden*.

In sum, it is well-recognized that "questions of causation are normally for the jury." *Redmon v. Daniel*, 779 S.E.2d 778, 784 (Ga. Ct. App. 2015). Outback presents no

arguments to overcome that common practice just because Plaintiff experiences chronic health conditions.

<u>CONCLUSION</u>

Based upon the foregoing, the Court **DENIES** Defendant's Motion for Summary Judgment [Doc. 28].[9] The Court notes that discovery closed in this case on December 7, 2022, and the deadline for dispositive motions passed on January 7, 2023. [Doc. 25]. Accordingly, the Court will set this case for trial in the April trial term, which begins on April 10, 2023. The Court will set a pre-trial conference at a later date. The parties should expect to shortly receive an order setting a pretrial conference and requiring the parties to prepare and submit a pretrial order. The Court expects the parties to immediately prepare for trial in the April term. Continuances will not be lightly granted.

**SO ORDERED**, this 6th day of March, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[9] The Court also **DENIES** Outback's Motion for Hearing [Doc. 37].